THE PEOPLE v. DEELBERT A. REYNOLDS.

*Criminal law—Information for obtaining property under false pretenses—Statutes—Construction of.*

An information for obtaining property by false pretenses, which avers that the respondent well knew them to be false, but fails to aver that such pretenses were false in *fact*, is fatally defective, and a conviction cannot be sustained under it.

Exceptions from Tuscola. (Beach, J.). Argued June 27, 1888. Decided July 11, 1888.

Respondent was convicted of obtaining goods by false pretenses. Judgment reversed, and respondent discharged. The facts are stated in the opinion.

*Davis & Nichols* (*Mitchel & McGarry*, of. counsel), for respondent.

*Moses Taggart*, Attorney General, and *T. W. Atwood*, Prosecuting Attorney, for the people.

LONG, J. The respondent in this cause was tried and convicted in the circuit court for the county of Tuscola for obtaining a stock of drugs and groceries of one Florence L. Coy by false pretenses, and brings the case into this Court upon exceptions.

The information was filed under section 9161 of Howell's Statutes, which provides:

"Every person who,, with intent to defraud or cheat another, shall designedly, by color of and false token or writing, or by any other false pretense, cause any person to grant," etc., "or obtain from any person any money, personal property, or valuable thing," etc., "shall be punished," etc. The information reads as follows:

"STATE OF MICHIGAN, }
"County of Tuscola, } ss.

"The Circuit Court for the County of Tuscola.

"Theron W. Atwood, prosecuting attorney for the county of Tuscola, aforesaid, for and in behalf of the people of the State of Michigan, comes into said court in the September term thereof, A. D. 1887, and gives it here to understand and be informed that on the 10th day of March, A. D. 1887, at the township of Columbia, in said county, Florence L. Coy was engaged in the business of selling drugs and groceries at retail; and on said day, at said place, she had and owned in her store building, in which she carried on said business, a stock of drugs and groceries of the value of $2,146.36.

"That the said business of Florence L. Coy, and the exclusive management of the same, and the said stock of drugs and groceries, was under the control of John S. Coy, who was acting as the agent of said Florence L. Coy.

"That on to wit, the said 16th day of March, A. D. 1887, at said township of Columbia, DeElbert A. Reynolds, late of Lyons, Ionia county, Mich., with intent to cheat and defraud her, the said Florence L. Coy, did then

and there apply to said John S. Coy, who was acting as the agent of the said Florence L. Coy, as aforesaid, and desired to purchase and buy said stock of drugs and groceries of said Florence L. Coy.

"That the said DeElbert A. Reynolds then and there said to the said John S. Coy that himself and one John M. Mosser were copartners, doing business under the firm name of D. A. Reynolds & Co., and desired to purchase and buy said stock of drugs and groceries for said firm; that he desired to turn out and exchange a certain real-estate mortgage, hereinafter mentioned, as part payment for said stock of goods.

"That on, to wit, the said 16th day of March, A. D. 1887, at said township of Columbia, in said county, the said DeElbert A. Reynolds, with intent to cheat and defraud her, the said Florence L. Coy, did then and there designedly and falsely represent to said John S. Coy, who was then acting as the agent of said Florence. L. Coy, as aforesaid, that a certain real estate mortgage, which he desired to turn out towards payment for said stock of drugs and groceries, as aforesaid, made and executed by one Frank Kuney to said De Elbert A. Reynolds upon the south one-half of the north-east quarter, and the north one-half of the south-east quarter, of section four, in township sixteen north, of range fourteen west, in Newaygo county, Mich., dated 17th day of June, A. D. 1886, for the sum of $2,400 drawing interest at seven per cent., payable as follows, two hundred dollars, and interest, August 15, 1886, and two hundred dollars, and interest, upon the 14th day of each ·month thereafter, was a gilt-edged mortgage, and first-class security for the payment of $1,736.36, the amount due upon the same.

"That the said land upon which the mortgage was given was worth $3,000 cash; that he had sold said land to said Frank Kuney for $3,000, and upon the sale to said Kuney received $600 in cash, and took back said mortgage for $2,400 to secure the balance of said purchase price of said land.

"That there was then growing and standing upon said land between one million and five hundred thousand and two million feet of good green pine sawing timber.

"That said Frank Kuney had paid in cash upon said mortgage, and the note accompanying the same, the sum of $400, June 21, 1886; twenty-three dollars and thirty-

five cents, September 16, 1886; two hundred and eleven dollars and sixty-six cents, October 15, 1886; and one hundred and ten dollars and fifty cents, November 15, 1886, —which left due upon said mortgage the sum of $1,736.36 on said 16th day of March, 1887.

"That said Frank Kuney would pay said mortgage by the last of June or the first of July, 1887; that said Frank Kuney, if he could not raise the money with which to pay said mortgage in any other way, would remortgage said land, and pay said mortgage.

"That the said DeElbert A. Reynolds had assigned said mortgage to said John M. Mosser, who was the junior member of D. A. Reynolds & Co., but Mosser would execute an assignment of said mortgage to said Florence L. Coy in case she would take and accept it as part payment for said stock of drugs and groceries.

"That said John S. Coy, relying upon and believing said false representations and pretenses so made to him by said DeElbert A. Reynolds as aforesaid to be true, was thereby then and there deceived and induced to sell, transfer, and deliver, and did sell, transfer, and deliver, as agent of said Florence L. Coy, having authority to do so, said stock of drugs and groceries of the said Florence L. Coy, of the value of $2,146.36, to said pretended firm of D. A. Reynolds & Co., for $410 in cash and said real estate mortgage, an assignment in writing of which mortgage was then and there delivered to the said Florence L. Coy by said DeElbert A. Reynolds, executed by said John M. Mosser, which mortgage was received by said Florence L. Coy as payment of the sum of $1,736.36 upon said stock of drugs and groceries, and the said DeElbert A. Reynolds did then and there, by means of said false pretenses and representations so made as aforesaid, unlawfully and fraudulently obtain said stock of drugs and groceries, the property of said Florence L. Coy, with intent to cheat and defraud her, the said Florence L. Coy, of the same.

"Whereas, in truth and fact, the said DeElbert A. Reynolds well knew that said real-estate mortgage was not a gilt-edged mortgage, and was not first-class security for the payment of $1,736.36, the amount due upon the same, and that it was of no value whatever; that said land upon which mortgage was given was not worth $3,000, and was not worth to exceed $100 ; that said land did not have 1,500,000 to 2,000,000 feet of good green

pine sawing timber growing and standing upon it, or any amount whatever; that he had not sold said land to said Frank Kuney for $3,000, or for any sum whatever; that said Frank Kuney had not paid $600 in cash, or any sum whatever, upon the purchase of said land; that said Frank Kuney had not paid cash or anything whatever upon said mortgage; that the said Frank Kuney would not remortgage said land to pay said mortgage, and never intended to,—contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Michigan."

On the trial, Mr. Coy was called as a witness for the people, and gave testimony tending to show that his wife, Florence L. Coy, was engaged in the drug and grocery business at Unionville, in 1886 and 1887, and that he was her agent in carrying on the business, and had exclusive charge of the same. He was then asked by the prosecuting attorney:

"*Q.* Do you know DeElbert A. Reynolds?

"*A.* Yes, sir.

"*Q.* When did you first become acquainted with him?

"*Mr. McGarry, Respondent's Attorney.* I object to that. I object to any evidence, under this information, seeking to charge the respondent with any crime, because the information is not sufficient in itself to authorize any evidence to be received connecting the respondent with the alleged crime, because—

"1. It is not pretended that the respondent pretended to make any pretenses whatever; the indispensable requirement has been left out in that respect.

"2. Neither is it alleged that the pretenses stated by Mr. Atwood to the jury were false in fact; it simply alleges that the respondent knew them to be false, without alleging the further necessary requirements that, in point of fact, they were false.

"Before any evidence whatever can be introduced connecting this respondent with the crime charged, there must be an information sufficient in itself to warrant the court in rendering judgment upon it.

"*By the Court.* There is a doubtful question upon the face of the information, but I am inclined to think that these subsequent allegations aid the omission of that word

'pretend' in there, so that the information on its face really works no injury to the defendant. I think I will hold it sufficient in this court."

The only allegations in the information showing the falsity of the pretenses are:

"Whereas, in truth and fact, the said DeElbert A. Reynolds well knew that said real-estate mortgage was not a gilt-edged mortgage," etc.

These are not allegations that the pretenses were false in fact. A false pretense was defined in a Massachusetts case to be "a representation of some fact or circumstance, calculated to mislead, which is not true." *Com. v. Drew,* 19 Pick. 184. This statute, like all criminal statutes, must be construed strictly, and nothing not within its words be held to be within its meaning. The most obvious proposition is that the pretense must be false (*People v. Tompkins,* 1 Park. Crim. R. 224); and the doctrine undoubtedly is that if it is not false, though believed to be so by the person employing it, it is insufficient. It being, therefore, necessary to prove the falsity of the pretense, it is necessary to aver it in the information. *State v. De Lay,* 93 Mo. 98 (5 S. W. Rep. 607). In this respect the information is fatally defective, and no conviction could be sustained under it.

The verdict and judgment of the court below must be set aside, and the respondent discharged.

The other Justices concurred.