PEOPLE v KRIST

Docket No. 78-154. Submitted June 22, 1979, at Detroit.—Decided
    November 6, 1979. Leave to appeal denied, 407 Mich 963.

Larry Krist was convicted of two counts of armed robbery in St.
    Clair Circuit Court, Halford J. Streeter, J. Two weeks prior to
    trial the defendant informed the trial court that he no longer
    desired to be represented by his appointed counsel. The defen-
    dant's counsel moved to withdraw, said motion being denied by
    the trial court. On the day of trial, the defendant sought
    appointment of a new counsel, alleging that his appointed
    counsel had on prior occasions demonstrated a lack of pre-
    paredness and had not acted in the defendant's best interests.
    The trial court denied the request for a new appointed counsel,
    and the defendant proceeded to trial with the counsel who had
    been previously appointed.

    The two counts of armed robbery arose out of separate
    robberies of two party stores occurring within a two hour
    period. The proofs showed that, during the first robbery, the
    defendant announced that he was armed with a gun, but that
    neither the defendant nor his co-participant, Thomas Surline,
    was observed with a gun or anything like a gun. Surline, who
    testified on behalf of the prosecution, testified that neither he
    nor the defendant had a gun. At the close of the proofs, the
    defendant moved to dismiss the first count of armed robbery by

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 67 Am Jur 2d, Robbery § 4.
[3] 73 Am Jur 2d, Statutes § 295.
[4] 67 Am Jur 2d, Robbery §§ 4, 6.
[5, 9] 5 Am Jur 2d, Appeal and Error § 778.
[6, 7] 21 Am Jur 2d, Criminal Law § 321.
    Accused right to choose particular counsel appointed to assist him.
        66 ALR3d 996.
[8] 21 Am Jur 2d, Criminal Law §§ 319, 321.
[10] 5 Am Jur 2d, Appeal and Error § 807.
    Propriety and prejudicial effect of informing jury that accused has
        taken polygraph test, where results of test would be inadmissible
        in evidence. 88 ALR3d 227.
[11] 5 Am Jur 2d, Appeal and Error §§ 778, 807.

reason of the lack of evidence of a weapon. The trial court denied the motion.

The defendant appeals alleging error in the trial court's refusal to dismiss the first count of armed robbery, error in the failure of the trial court to hold an evidentiary hearing regarding the pre-custody photographic identification without counsel being present and error flowing from ineffective assistance of counsel. *Held:*

1. The essential elements of armed robbery are that: (1) an assault was committed by the defendant upon the complainant; (2) the defendant feloniously took from the complainant, or in his presence, property which might be the subject of a larceny; and (3) the defendant was armed with a weapon as described in the statute. Armed robbery is distinguished from unarmed robbery by the element requiring proof that the perpetrator of the robbery used a dangerous weapon or an article used or fashioned so as to lead the person assaulted to reasonably believe that the article was a dangerous weapon.

2. Applying the rule of statutory construction that criminal statutes should be strictly construed, mere proof of oral statements made by the defendant during the robbery that he is armed with a dangerous weapon is insufficient to establish the "being armed" element of the armed robbery statute. In order to satisfy that statutory element, some physical manifestation of the existence of a dangerous weapon or an article reasonably believed to be a dangerous weapon must be shown. The conviction for armed robbery under the first count must, accordingly, be reduced to a conviction for unarmed robbery.

3. Any error in failing to hold an evidentiary hearing relative to the validity of the pre-custody photographic identification without counsel being present is harmless error, since the evidence of guilt was overwhelming and the in-court identification of the defendant had a basis independent from any pretrial identification procedure.

4. While a defendant is not entitled to an appointed attorney of his own choosing, he is entitled to have his appointed counsel replaced upon a showing of good cause, providing that the substitution of counsel does not unreasonably disrupt the judicial process. The decision regarding substitution of an appointed counsel is addressed to the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion. Allegations of inadequate assistance of counsel on the basis of lack of preparation must be supported, on appeal,

by a showing of prejudice arising out of the counsel's lack of preparation.

5. A disagreement between a defendant and his appointed counsel regarding trial strategy, in the absence of a bona fide irreconcilable dispute regarding a substantial defense, does not constitute sufficient grounds for appointment of a new counsel.

6. The failure of appointed counsel to move for separate trials on the two armed robbery counts does not mandate reversal on the basis of inadequate assistance of counsel. Even if it was error on the part of counsel to fail to request severance, the failure to so request severance did not appreciably affect the defendant's chances of acquittal, since, because of the similarities between the two crimes and their temporal proximity, evidence of the other robbery would have been admissible in each of the trials had severance been granted.

7. The decision of appointed counsel to pursue the matter of a polygraph test of Surline, during the cross-examination of that witness, was a matter of trial strategy and did not deny the defendant a fair trial or effective assistance of counsel. The questions were designed to impugn Surline's reputation and did not elicit the results of the polygraph test. Further, the trial court cautioned the jury to disregard any reference to the polygraph test.

8. While it was improper to admit the testimony relative to Surline's prior offer to commit an armed robbery, the admission of that testimony did not result in reversible error, since the record established that Surline's statements were made some time prior to the robberies at issue and were not linked to the defendant, and since the trial court gave a limiting instruction to the jury.

Reversed in part, affirmed in part.

1. ROBBERY — ARMED ROBBERY — ELEMENTS — STATUTES.

The essential elements of armed robbery are that: (1) an assault was committed by defendant upon the complainant; (2) the defendant feloniously took from the complainant or in her presence property which might be the subject of a larceny; and (3) the defendant was armed with a weapon as described in the statute (MCL 750.529; MSA 28.797).

2. ROBBERY — ARMED ROBBERY — UNARMED ROBBERY.

Armed robbery is distinguished from unarmed robbery by the element requiring proof that the perpetrator of the robbery used a dangerous weapon or an article used or fashioned so as

to lead the person assaulted to reasonably believe that the article was a dangerous weapon.

3. CRIMINAL LAW — STATUTES — CONSTRUCTION.
   Criminal statutes are to be strictly construed.

4. ROBBERY — ARMED ROBBERY — EVIDENCE — STATUTES.
   Proof of oral statements made by a defendant during a robbery that he is armed with a dangerous weapon is insufficient to establish the "being armed" requirement of the armed robbery statute; some physical manifestation of the existence of a dangerous weapon or some article reasonably believed to be a dangerous weapon is necessary to establish the "being armed" element (MCL 750.529; MSA 28.797).

5. CRIMINAL LAW — PRETRIAL IDENTIFICATION — EVIDENCE — HARMLESS ERROR.
   Any error in failing to hold an evidentiary hearing relative to the validity of a pre-custody photographic identification without counsel being present is harmless error where the evidence of guilt is overwhelming and the in-court identification of defendant had a basis independent from any pretrial identification procedure.

6. ATTORNEY AND CLIENT — CRIMINAL LAW — APPOINTED COUNSEL — SUBSTITUTION — DISCRETION — APPEAL AND ERROR.
   A criminal defendant, while not entitled to an appointed attorney of his own choosing, is entitled to have his assigned counsel replaced upon a showing of good cause, providing that substitution of counsel does not unreasonably disrupt the judicial process; the decision regarding substitution is addressed to the discretion of the trial court and will not be overturned on appeal absent a showing of an abuse of discretion.

7. ATTORNEY AND CLIENT — CRIMINAL LAW — APPEAL AND ERROR — ASSISTANCE OF COUNSEL — LACK OF PREPARATION — PREJUDICE.
   A criminal defendant alleging inadequate assistance of counsel by reason of counsel's lack of preparation must show, on appeal, prejudice originating from counsel's lack of preparation.

8. ATTORNEY AND CLIENT — CRIMINAL LAW — APPOINTED COUNSEL — DISAGREEMENT WITH COUNSEL.
   A disagreement between a criminal defendant and his appointed counsel regarding trial strategy, in the absence of a bona fide irreconcilable dispute regarding a substantial defense, does not constitute sufficient grounds for appointment of a new counsel.

9. ATTORNEY AND CLIENT — CRIMINAL LAW — ASSISTANCE OF COUN-
      SEL — SEVERANCE OF TRIALS — PREJUDICE.

   The failure of counsel to move for separate trials on two robbery
   counts does not mandate reversal on the basis of inadequate
   assistance of counsel where the evidence against defendant on
   each count was abundant and where, because of the factual
   similarities between the two crimes and their temporal proxim-
   ity, evidence of each crime would be admissible in the trial of
   the other, the failure to move for severance not appreciably
   affecting defendant's chances of acquittal.

10. ATTORNEY AND CLIENT — CRIMINAL LAW — ASSISTANCE OF COUN-
      SEL — EXAMINATION OF WITNESSES — POLYGRAPH TEST — TRIAL
      STRATEGY.

   The decision of counsel to pursue the matter of a polygraph test
   of a witness for the prosecution during the cross-examination of
   that witness was a matter of trial strategy and did not deny
   defendant a fair trial or effective assistance of counsel where
   the questions asked, which were designed to impugn the wit-
   ness's credibility, did not elicit the results of the polygraph test
   and where the trial court cautioned the jury to disregard any
   reference to the polygraph test.

11. EVIDENCE — CRIMINAL LAW — PRIOR OFFER TO COMMIT A CRIME
      — ADMISSION — HARMLESS ERROR.

   The improper admission of testimony relative to a prior offer to
   commit a crime made by the defendant's co-participant did not
   result in reversible error where it was established on the record
   at trial that defendant was not present at the time the state-
   ment was made and the trial court gave a limiting instruction
   to the jury.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Peter E. Deegan,*
Prosecuting Attorney, and *Peter R. George,* Chief
Appellate Attorney, for the people.

*Kathleen M. Cummings,* Assistant State Appel-
late Defender, for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and D. C. RILEY and
J. X. THEILER,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

D. C. Riley, J. Defendant was tried and jury convicted of two counts of armed robbery, MCL 750.529; MSA 28.797. He was thereafter sentenced to concurrent terms of 14 to 20 years imprisonment on each count, and appeals by right.

The evidence presented at trial involved two closely related robberies. On December 10, 1976, at approximately 10:30 p.m., two men robbed the Beverage Barn, a take-out convenience store in Port Huron. On December 11, 1976, at about 12:10 a.m., 1-1/2 to 2 hours after the first robbery, a similar crime took place at Walsh's Party Store, also in Port Huron.

Witness Timothy Tiegeler, a clerk at the Beverage Barn, testified that as he returned from the stockroom he was struck, thrown to the floor near the cash register and ordered to lie still. One of the assailant's said, "that they had a .357 magnum and they were going to blow my head off". Tiegeler stated that although he never saw a gun, nor anything that looked like a gun, he conducted himself as though one was trained on him because of the threat made.

Various witnesses present at Walsh's Party Store stated that an "armed robbery" was specifically announced. In addition, co-participant Thomas Surline was variously described by four witnesses as waving his hand in his coat pocket and shouting "I have a gun, I have a gun".

Surline testified for the prosecution, and admitted his participation in the two robberies, stating that he and Krist had spent the evening of December 10, 1976, drinking heavily and smoking marijuana. He remarked that Krist had told an attendant at the Beverage Barn that he possessed a gun. Surline stated that, after going to two other bars nearby, they both robbed Walsh's Party Store. He

further indicated that it was he who had his hand in his pocket, but asserted that he held a bottle of beer, and not a gun. On cross-examination, Surline claimed that neither he nor Krist actually had a weapon. He further testified that he had never seen defendant with a gun of any type.

Other facts necessary to the resolution of the five issues raised by defendant on appeal are discussed where pertinent.

Defendant initially contends that the trial judge erred in refusing to dismiss Count I (Beverage Barn robbery) because no evidence was adduced at trial showing that defendant was armed with a weapon as required by the armed robbery statute, MCL 750.529, which provides that:

"Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the subject of larceny, *such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon,* shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years." (Emphasis supplied.)

The essential components of the statute mandate a showing that (1) an assault was committed by defendant upon the complainant; (2) the defendant feloniously took property which might be the subject of larceny from the complainant or in his presence; and (3) the defendant was armed with a weapon as described in the statute. *People v Beebe,* 70 Mich App 154, 157-158; 245 NW2d 547 (1976), *People v Karasek,* 63 Mich App 706, 710; 234 NW2d 761 (1975).

Armed robbery is distinguished from unarmed

robbery, MCL 750.530; MSA 28.798,[1] by the element of a dangerous weapon, or any article so used or fashioned. Both crimes involve the element of assault and fear. With regard to its third requirement, the armed robbery statute evidences a dichotomous intermix between two separate measures of governmental proof. Verification of a "dangerous weapon" or "an article used or fashioned" etc. apparently requires an objective showing. However, the latter phrase is patently conjoined with subjective proof regarding the victim's state of mind.

The prosecution concedes that there was no evidence in Count I that a weapon was used, but maintains that the main thrust of the statute points to the reasonable belief of the victim, and, therefore, defendant's declaration that he had a gun and would use it was sufficient to sustain its burden of proof. We do not agree.

Several Michigan decisions have upheld convictions where, as in Count II, the facts adduced at trial indicated that a defendant had gestured with a covered hand in such a manner as to lead the victim to conclude that he probably had a weapon. *People v Shipp,* 34 Mich App 67, 69; 190 NW2d 750 (1971), *People v Washington,* 4 Mich App 453, 455-456; 145 NW2d 292 (1966), *People v Jury,* 3 Mich App 427, 432; 142 NW2d 910 (1966). See also *People v Boxx,* 16 Mich App 724, 725; 168 NW2d 628 (1969), wherein evidence that the victims felt hard objects pressed against them and saw what they thought were guns was sufficient to bind over

---

[1] "Any person who shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years." MCL 750.530; MSA 28.798.

defendant for trial. No case, however, has addressed the factual setting before us.

Our resolution of the issue is guided in part by the long-standing principle that criminal statutes are to be strictly construed. *People v Lockwood,* 308 Mich 618, 622; 14 NW2d 517 (1944), *People v Goulding,* 275 Mich 353, 358; 266 NW 378 (1936), *People v Reynolds,* 71 Mich 343, 348; 38 NW 923 (1888), *People v Gilbert,* 88 Mich App 764, 768; 279 NW2d 546 (1979), *People v Goodchild,* 68 Mich App 226, 232; 242 NW2d 465 (1976).

Consistent therewith, and in accordance with the wording of the statute, we are of the opinion that, under the "article so used or fashioned" element of armed robbery, there must be, in addition to proof of the victim's fear, competent evidence purporting to establish some attempt by defendant, aside from mere oral insinuations, to physically communicate the existence of a dangerous weapon. A verbal statement, without more, is insufficient. In this manner, both the objective and subjective criteria of the "article so used or fashioned" portion of the statute are satisfied.

We note that the result of this interpretation does not relieve a defendant of criminal liability, but rather, only effects conviction under another, albeit lesser, statute, *i.e.,* unarmed robbery.[2] Accordingly, we vacate defendant's armed robbery conviction under Count I and remand for entry of conviction for unarmed robbery[3] and resentencing.

[2] The maximum penalty for armed robbery is life imprisonment, whereas the punishment for unarmed robbery cannot exceed 15 years.

[3] As unarmed robbery is a necessarily lesser included offense of armed robbery, *People v Chamblis,* 395 Mich 408, 424; 236 NW2d 473 (1975), *People v Green,* 86 Mich App 142, 150; 272 NW2d 216 (1978), *People v Jones,* 71 Mich App 270, 273; 246 NW2d 381 (1976), the jury, in convicting defendant of the higher charge, necessarily found him guilty of the lesser.

Defendant next assails the trial judge's failure to hold an evidentiary hearing[4] regarding the validity of his pre-custody photographic identification without counsel being present, and by allowing the identifying witnesses to testify regarding same.

If the complained-of procedure was, in fact, erroneous, we determine that any error in permitting such testimony was clearly harmless error. *Gilbert v California,* 388 US 263, 272-274; 87 S Ct 1951, 1956-1957; 18 L Ed 2d 1178, 1186-1187 (1967), *Chapman v California,* 386 US 18, 24; 87 S Ct 824, 828; 17 L Ed 2d 705, 710-711 (1967), *People v Anderson,* 389 Mich 155, 167-169; 205 NW2d 461 (1973). The evidence of guilt in both counts, including the considerable and destructive testimony of codefendant Surline, was overwhelming. In addition, despite any impropriety of the photo showups, the in-court identifications of defendant originated from an independent basis. *People v Hill,* 88 Mich App 50, 64; 276 NW2d 512 (1979), *People v Richmond,* 84 Mich App 178, 182; 269 NW2d 521 (1978). Witness Timothy Tiegeler recognized defendant as a high school classmate, and further testified that defendant had been in the Beverage Barn store twice before on the night in question. The four employees of Walsh's Party Store testified that they observed defendant throughout the course of the robbery, while one also recognized defendant from several previous appearances at the market. All gave detailed descriptions of defendant's appearance on the night in question. We find no reversible error.

Defendant also asserts that, for three reasons, he was denied the effective assistance of counsel: (1) despite evidence of a breakdown in the attor-

[4] *United States v Wade,* 388 US 218, 242; 87 S Ct 1926, 1940; 18 L Ed 2d 1149, 1166 (1967).

ney-client relationship, the trial court failed to explore defendant's claims or appoint substitute counsel; (2) defense counsel had failed to demand separate trials for the two robbery offenses; and (3) counsel had failed to properly cross-examine co-participant Surline regarding a polygraph test.

Although an indigent defendant is constitutionally[5] guaranteed representation by counsel, that right does not extend to an attorney of his own choosing. *People v Eddington,* 77 Mich App 177, 185; 258 NW2d 183 (1977). Nevertheless, he may be entitled to have his assigned lawyer replaced upon a showing of adequate cause, *People v Ginther,* 390 Mich 436, 441; 212 NW2d 922 (1973), *People v Blassingame,* 59 Mich App 327, 331; 229 NW2d 438 (1975), *People v Bradley,* 54 Mich App 89, 95; 220 NW2d 305 (1974), provided it does not unreasonably disrupt the judicial process. *Blassingame, supra,* 331, *People v Wilson,* 43 Mich App 459, 462; 204 NW2d 269 (1972), but see *People v Charles O Williams,* 386 Mich 565, 574-577; 194 NW2d 337 (1972). The decision regarding substitution is entrusted to the trial court's discretion, *Eddington, supra,* 185-186, and will not be overturned on appeal absent an abuse of that discretion.

The record reveals that, approximately two weeks before the original trial date, defendant, by letter of August 1, 1977, informed the trial court that he no longer desired representation by his then present attorney. Defense counsel thereafter moved to withdraw, but that motion was denied. Defendant's attorney continued his representation at numerous motions held August 1, 8 and 15, 1977. On the last date, defendant's motion to "waive court-appointed counsel" was granted; how-

[5] US Const, Ams VI, XIV, Const 1963, art 1, § 20.

ever, the court indicated that defense counsel would be present at defendant's side should he need assistance. On August 17, the day set for trial, defendant requested of the trial court another attorney, and also indicated that he had talked to his father about funds to retain counsel. At this time defendant proffered several reasons why new counsel should be appointed, including allegations that counsel had, on prior occasions, been unprepared, had waived his rights without consulting him, and had failed to insist that a district judge, who had previously represented defendant, disqualify himself from hearing the preliminary examination in another case involving defendant where then present counsel was also appointed.

Initially, we note that, on appeal, it is incumbent upon defendant to show prejudice originating from his attorney's alleged lack of preparation. *People v Hernandez,* 84 Mich App 1, 8; 269 NW2d 322 (1978), *People v Bradley,* 54 Mich App 89, 96; 220 NW2d 305 (1974), *People v Russell,* 47 Mich App 320, 324; 209 NW2d 476 (1973). No such showing has been made in the present case. On the contrary, a perusal of the transcript reveals that defense counsel made several pretrial motions and conducted extensive discovery. With respect to defendant's remaining assertions, the record fails to substantiate the defendant's complaints by a showing of the required negligence on the part of his attorney.

Although there was evidence of tangible disagreement between defendant and counsel, we do not find it sufficient to qualify as adequate cause for substituted counsel. Absent a bona fide irreconcilable dispute regarding, for instance, a substantial defense, disagreements regarding trial strategy

do not constitute sufficient grounds for the appointment of successor counsel. *People v Hooper,* 82 Mich App 713, 716; 267 NW2d 162 (1978), *Hernandez, supra,* 9. In this regard we observe that defendant has already had two lawyers but seeks yet a third. Defendant's then present counsel was himself appointed substitute counsel when defendant became dissatisfied with his originally appointed attorney. In sum, under these circumstances, noted by the court below, we find no abuse of discretion.

Defendant's claims that counsel's failure to move for severance and his improper cross-examination of co-participant Surline were serious mistakes denying him effective counsel must fall, unless, but for these alleged errors, defendant would have had a reasonably likely chance of acquittal. *People v Garcia,* 398 Mich 250, 266; 247 NW2d 547 (1976), *People v DeGraffenreid,* 19 Mich App 702, 718; 173 NW2d 317 (1969). Here, although joinder of the two robbery counts may have been improper, *People v Tobey,* 401 Mich 141; 257 NW2d 537 (1977), *People v Ritchie,* 85 Mich App 463; 271 NW2d 276 (1978), the evidence against defendant, including the testimony of several eyewitnesses (in addition to co-participant Surline's narrative), was abundant. Moreover, had severance been granted, the analogous factual settings between the two crimes, including time, location, type of establishment robbed and parties involved, would have likely rendered evidence of one crime admissible in the trial of the other under the similar acts statute, MCL 768.27; MSA 28.1050. Thus, we are unable to conclude that, had defendant's attorney requested a severance, defendant's chances for acquittal would have been appreciably elevated.

Nor can we determine otherwise in the case of counsel's cross-examination of Surline regarding his previous polygraph examination. When Surline inadvertently mentioned the polygraph test, defense counsel clearly perceived it as a method of challenging the witness's credibility. Choices made by counsel within the rubric of "trial strategy" do not deprive a defendant of either a fair trial or effective assistance of counsel. *People v Garcia, supra,* 264-266, *People v Bowen,* 77 Mich App 684, 690; 259 NW2d 189 (1977), *People v Penn,* 70 Mich App 638, 648; 247 NW2d 575 (1976). The brief questions at issue, designed to impugn the witness's credibility, did not elicit the *results* of the exam, see *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977), *People v Davis,* 343 Mich 348; 72 NW2d 269 (1955), and the trial judge cautioned the jury to disregard any reference to the polygraph.

Defendant's penultimate allegation questions the lower court's evidentiary ruling that enabled the prosecution to introduce, over defendant's objection, testimony relating to Surline's prior offer to commit an armed robbery.

Laura Watson, a waitress at the German Gardens, one of the two intervening bars allegedly visited between the robberies in question, testified that approximately ten days prior to the date of the robberies Surline informed her that he was going to rob the German Gardens bar and had asked for her assistance. The statement was introduced to illustrate the concern and apprehension Ms. Watson and the owner of the bar shared when they learned defendant and Surline were present, and to account for their vivid recollection of that evening.

Surline's declaration was totally irrelevant and

non-probative of defendant Krist's guilt in either of the two robberies. Although the trial judge incorrectly allowed its admission into evidence, the error was not reversible inasmuch as defendant was not with Surline at the time of the statement and the trial judge further gave a limiting instruction to the jury.

Finally, we briefly reject defendant's contention that the prosecutor's remarks during closing argument considered facts not in evidence and, therefore, denied him a fair trial. In view of the evidence and theories presented at trial, the comments were within the bounds of permissible debate and observation. We find no error.

Reversed in part, affirmed in part.