# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SANDRA KAY VLAZ-ST. ANDRE,

        Defendant-Appellant.

UNPUBLISHED
November 28, 2017

No. 333455
Wayne Circuit Court
LC No. 12-009342-02-FH

Before: METER, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of conducting or participating in a criminal enterprise, MCL 750.159i(2), conspiracy to engage in a criminal enterprise, MCL 750.159i(4), failure to file an income tax return with the intent to defraud, MCL 205.27(1)(a), and receiving and concealing stolen property valued at $20,000 or more, MCL 750.535(2)(a). Defendant was originally sentenced to 7 to 20 years' imprisonment each for the criminal enterprise conviction and criminal enterprise conspiracy conviction, 2 to 5 years' imprisonment for the failure to file an income tax return with the intent to defraud conviction, and 2 to 10 years' imprisonment for the receiving and concealing stolen property conviction. An amended judgment of sentence adjusted defendant's sentences for the criminal enterprise and criminal enterprise conspiracy convictions to 3 to 20 years' imprisonment. For the reasons set forth in this opinion, we affirm.

## A. FACTS

This matter arises from charges brought against former city of Romulus police officers and defendant pertaining to accusations of malfeasance, misfeasance, fraud, embezzlement and other criminal activities regarding the misuse and conversion of forfeiture funds from the Romulus Police Department. Defendant is involved as the wife of a former chief of police, Michael Charles St. Andre, who was also a defendant in this matter. The criminal charges that arose related to "a pattern of racketeering activity" by various police and command officers of the Romulus Police Department's Special Investigations Unit (SIU), spanning the years of 2006 through 2011. In short, Michael St. Andre, while chief of police and in other roles involving the SIU, submitted purposefully misleading and exaggerated expense reports, which included fictitious payments to confidential informants, in addition to the signing of various documents to falsify his taking and use of forfeiture monies belonging to the police department. Michael St.

-1-

Andre and defendant used these monies for their personal benefit in gambling at casinos and for the down payment on a tanning salon. Evidence at trial showed that defendant was aware of the illegal activities of her husband in obtaining the proceeds, which were not reported on defendant's tax returns.

Defendant's jury trial began on January 9, 2014. John Leacher, the city of Romulus Public Safety Director since November 13, 2013, testified regarding the conduct of an investigation internally of the Police Department involving the misappropriation of forfeiture funds. Leacher spoke with defendant on December 10, 2008, and arranged an in-person meeting at the tanning salon she owned with her husband the following day. Defendant told Leacher she was aware that her husband Michael St. Andre was gambling with forfeiture money, that she accompanied him to casinos three to four times a month and that he gave her money to place bets. Michael St. Andre told defendant that if she won, the money would be used to reimburse the forfeiture funds taken, but not to be concerned because it would be taken care of if gambling losses occurred.

Defendant told Leacher she did not know where $22,000 of the monies used to purchase the tanning salon originated from. Defendant provided Leacher with various bank account numbers and told him that Michael St. Andre informed her of $10,000 in cash in the basement of their home, which defendant had found and confirmed. Defendant also reported that Michael St. Andre paid for various surgeries she received with cash and that they had spent $10,000 on home renovations and also taken a trip to Hawaii.

Linda McNeil, from the city of Romulus Assessor's Office, received a telephone call from defendant in the fall of 2008, indicating she had information pertaining to grievances that had been filed involving overtime being received by Christine Rohn at the Police Department. McNeil and Marsha Gilstorf met with defendant and an unidentified female friend at a local restaurant. Defendant accused Michael St. Andre of misappropriating $15,000 in forfeiture money and suggested that he purchased the tanning salon for defendant "to shut her up." Defendant indicated she was aware that Michael St. Andre was engaged in an extramarital affair with Rohn.

Various individuals including Mahmoud Farha, a worker at a local Subway restaurant, and various Wayne County prosecutors involved in forfeitures, testified that receipts indicating purchases or costs associated with meetings with them or at a Subway restaurant were falsified. A confidential informant assisted the Michigan State Police in their investigation and testified that receipts from the city of Romulus Police Department purportedly documenting some of his work as a confidential informant for Romulus were falsified. Christine Rohn confirmed that she engaged in an extramarital affair with Michael St. Andre and that he paid for her apartment and utilities. He also purchased a vehicle for her, and paid for a trip to California and Las Vegas.

Gerald Humes, a forensic certified public account, discussed his review of defendant and Michael St. Andre's 2006 to 2009 state tax returns and 2006 to 2008 federal tax returns, as well as their bank accounts. Humes also reviewed the documentation from the Romulus Police Department SIU, finding the SIU spent $431,428.16 in forfeiture funds from 2006 through 2008, with Michael St. Andre spending $209,323.25, or 48.52% of the monies. Reviewing defendant and Michael St. Andre's credit union accounts, Humes found significant cash deposits by

defendant and Michael St. Andre, but was unable to identify the source of the funds deposited. For instance, of 113 cash deposits, Humes could only verify the source for one deposit. The accounts at the credit union were held jointly by defendant and Michael St. Andre, with defendant's name or signature on many deposit slips and checks. Humes identified total deposits into the credit union accounts for three years as follows: (a) 2006 - $121,764.21; (b) 2007 - $199,045.24; and (c) 2008 - $263,854.75. Comparing the bank records to the tax returns for defendant and Michael St. Andre, Humes was unable to identify the source of $110,951 deposited, often as cash through ATMs. Humes also discussed a separate bank account for defendant and Michael St. Andre with National City, containing approximately $9,000 at various times.

Defendant was convicted and sentenced as set forth above. This appeal ensued.

## B. ANALYSIS

## I. PROSECUTORIAL MISCONDUCT

On appeal, defendant contends the prosecutor engaged in misconduct during rebuttal argument by suggesting that defense counsel was purposefully lying or attempting to mislead the jury.

"Issues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Furthermore, this Court "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Id.* at 475-476.

During closing argument, defense counsel emphasized Michael St. Andre did not serve as chief of police during 2006 to 2008, stating:

> Chief Kirby . . . had to report to the mayor. And before . . . the forfeiture funds were then given back to the Police Department to use for undercover operations, four people had to approve that. That happened from about 2006 to 2008, ladies and gentlemen.
>
> We haven't heard, or remember the lack of evidence. We haven't heard from Chief Kirby at all, ladies and gentlemen.
>
> We haven't heard from the man that decided to give the money ultimately back to the Police Department, and that is the mayor. We haven't heard from him either.
>
> * * *
>
> I submit to you, ladies and gentlemen, that this is a much bigger organization. This started all the way at the top like a pyramid. My client isn't even remotely part of that period – pyramid.

In rebuttal, the prosecutor responded as follows:

You know what, if every – have you ever heard a red herring in a story when you're reading a mystery in a book, you know, that the butler did it over here.

I always talk about this.

I always like to say, you know what . . . when you don't have evidence and you don't have the evidence on your side, you pound the table or you do one of these things.

Oooh, bright shiny objects. Look over here. Don't look at the evidence. Look at here. Look at the bright shiny object. And that's exactly what defense counsel is trying to get you to do.

On appeal, defendant argues that the prosecutor's rebuttal argument amounted to misconduct that denied her a fair trial.

It is not permissible for a prosecutor to imply or assert that defense counsel is intentionally trying to mislead a jury. *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). However, a prosecutor is permitted "great latitude regarding his or her arguments and conduct at trial," *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010), and it is not deemed necessary that a prosecutor restrict his or her argument "to the blandest possible terms," *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id.* at 64.

In this case, the prosecutor's rebuttal suggested that defense counsel was distracting the jury from the relevant evidence, but did not imply that defense counsel was intentionally trying to mislead the jury. The prosecutor did not accuse defense counsel of lying or fabricating evidence and instead tended to focus the jury on the incriminating evidence that was presented at trial. Furthermore, the prosecutor's comments were made in rebuttal to defense counsel's closing argument, which emphasized the absence of testimony from certain individuals, implying the missing testimony would lessen or contradict the evidence presented. Moreover, this Court has previously held that a "prosecutor's designation of defense counsel's arguments as 'red herrings' did not generate the type of accusatory prejudice [typically] decried[.]" *Dobek*, 274 Mich App at 67. Similarly, here, the prosecutor's remarks were brief and the crux of the rebuttal argument was an attempt to convince the jury to focus on the evidence that the prosecutor deemed most relevant.

Additionally, in its final instructions to the jury, while discussing what comprised evidence, the trial court stated:

And the lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept things that the lawyers have said that are supported by the evidence or by your own common sense.

This Court "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272

(2008) (citations omitted). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Id.*

In short, considering the jury instruction and the nature of the prosecutor's statement, the prosecutor did not engage in conduct that amounted to misconduct that denied defendant a fair trial. As such, defendant cannot show that defense counsel's failure to object to the prosecutor's statements amount to ineffective assistance of counsel. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## II. RIGHT TO COUNSEL

Next, defendant contends the trial court erred in failing to permit her trial counsel to withdraw, thereby denying defendant her right to counsel. In part, defendant asserts the trial court was deficient in failing to engage in further inquiry regarding the reasons for counsel's request to withdraw and the extent of the attorney-client breakdown.

Approximately less than one month before the start of defendant's trial, on December 16, 2013, defense counsel moved to withdraw as defendant's counsel. In the motion, defense counsel acknowledged that trial was scheduled to begin on January 9, 2014, and that he had been an attorney of record on the case since December 16, 2011. Counsel asserted that defendant was no longer able "to afford the continued representation of retained counsel," and that defendant was not communicating with counsel following his advice regarding resolution of the case through a plea offer.

At the beginning of the hearing, the trial court indicated having read the motion and engaging in a discussion "at side bar and in chambers" with counsel, and asked defense counsel if there was any additional information, beyond that in the written motion, to add to the request. Defense counsel denied any additional information or reasons for his request, with the trial court declining the necessity of defense counsel providing elaboration regarding defendant's most recent communication with her counsel in declining the plea offer. In denying the request, the trial court explained:

> I gather from the motion that there's both a financial resource issue, in other words, Mrs. St. Andre is not paying her attorney fee and that the lines of communication between you and your client have frayed and she doesn't seem to be responding very sensibly to your counsel.

> All I can say is that I think she's being very shortsighted and, and sort of delusional about what's going to happen very soon here.

> Under no circumstances, Mr. Nucian, would I let you out at this very late date. I don't think there's a reason on earth that you would give me that would motivate me to do that.

> This case has been on the court's docket here in front of one judge or another for four hundred and fifty or so days.

-5-

As you say in your motion you [sic] been attorney of record since December 16th, 2011; that's two years. Plenty of time to work out your fee arrangements. But apparently you're not getting paid, and I'm sorry about that, but I'm not letting you out for that reason. You're just gonna have to try the case in January when it comes up.

And I guess, you know, cash and carry, of course, is always a lawyer's option in the representation of clients, especially under circumstances like this. So I'm not letting you out at this late date. And I don't want this trial adjourned or delayed any further.

A criminal defendant has a Sixth Amendment right to retain counsel of choice. *People v Akins*, 259 Mich App 545, 557; 675 NW2d 863 (2003). "However, the right to counsel of choice is not absolute. A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated." *Id.*, (citations and quotation marks omitted).

A trial court's decision to deny defense counsel's motion to withdraw is reviewed for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007). In reviewing a trial court's denial of a defense attorney's motion to withdraw, this Court considers the following factors:

> (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [*Id.* (quotation marks omitted).]

In this case, defendant's case had been on the court's docket for over 400 days. Defense counsel filed a motion to withdraw approximately three weeks before trial. The primary reason identified by defense counsel for seeking permission to withdraw was defendant's lack of payment of the attorney fees being incurred. Defense counsel also noted defendant's reluctance to accept his advice regarding the benefit of accepting a plea offer to resolve this matter. The trial court declined to grant defense counsel's motion premised on the proximity of trial and counsel's long-standing involvement in the case on defendant's behalf.

The trial court did not abuse its discretion in denying the motion to withdraw. Here, at the time of the motion, the case had been pending for a substantial amount of time, defense counsel had represented defendant for over two years, and trial was imminent, scheduled to initiate three weeks from the date of defense counsel's motion. Yet, at a prior pretrial conference, conducted merely two weeks before the hearing on the motion to withdraw, defense counsel did not indicate the presence of any conflicts or issues regarding his representation of

defendant, instead identifying his intention to meet with the prosecutor to review certain matters before trial, and suggesting a readiness to proceed.

Additionally, defense counsel had represented defendant for an extended period of time, comprising the entire pendency of the charges; thus, it was unlikely that another attorney could substitute in for defense counsel within a reasonable amount of time. Furthermore, defendant had more than one of the attorneys with the firm representing her involved in the case, minimizing any potential disputes or displeasure with a specific individual's performance. In addition, the primary basis for the motion to withdraw was the lack of receipt of payment of attorney fees. Thus, there did not appear to be such disagreement between counsel and defendant such that representation was frustrated and defendant did not indicate her dissatisfaction with counsel.

"Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Traylor*, 245 Mich App at 462 (citation omitted). "A defendant may not purposely break down the attorney-client relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel." *Id.* at 462-463, quoting *People v Meyers (On Remand)*, 124 Mich App 148, 166-167; 335 NW2d 189 (1983).

In this instance, there has been no demonstration of good cause to support the substitution of defense counsel. The problem identified was lack of payment and not fundamental disagreements regarding defendant's legal representation or the defenses to be pursued at trial. While defendant may have been resistant regarding her refusal to consider or accept various plea offers, this does not establish a level of disagreement between defendant and her counsel "sufficient to qualify as adequate cause for substituted counsel." *People v Krist*, 93 Mich App 425, 436; 287 NW2d 251 (1979). "Absent a bona fide irreconcilable dispute regarding, for instance, a substantial defense, disagreements regarding trial strategy do not constitute sufficient grounds for the appointment of successor counsel." *Id.* at 436-437.

Defendant argues that, in denying the motion, the trial court failed to undertake an adequate inquiry with regard to whether a breakdown had occurred in the attorney-client relationship. However, defendant did not request alternative counsel or express dissatisfaction with counsel's performance. While defendant declined, against the advice of her counsel, to accept any of the plea deals offered by the prosecutor, there was no indication that the defenses or trial strategy to be pursued were a matter of contention or disagreement between defendant and her counsel. Thus, further inquiry by the trial court was not warranted because the basis for the withdrawal request was premised on the lack of fee payment and not any significant breakdown in the attorney-client relationship with regard to the strategy for defendant's legal representation.

In sum, the trial court did not abuse its discretion in denying defense counsel's motion to withdraw.

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Michael J. Riordan