PEOPLE v DANIEL MEYERS (ON REMAND)

PEOPLE v CHARLES MEYERS (ON REMAND)

Docket Nos. 62450, 62451. Submitted February 8, 1983, at Lansing.—
Decided March 10, 1983.

Daniel W. Meyers and Charles A. Meyers were convicted of
armed robbery following a jury trial in Oakland Cricuit Court,
Frederick C. Ziem, J. Defendants appealed. The Court of Ap-
peals reversed, holding that the prosecution failed to bring
defendants to trial within the 120-day period mandated by the
Interstate Agreement on Detainers. 109 Mich App 719 (1981).
The Oakland County Prosecutor sought leave to appeal to the
Michigan Supreme Court. The Supreme Court, in lieu of grant-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 404-406.
Validity, construction, and application of Interstate Agreement on
Detainers. 98 ALR3d 160.
[3] 75 Am Jur 2d, Trial §§ 17, 18.
[4] 75 Am Jur 2d, Trial § 21.
Antagonistic defenses as ground for separate trials or codefen-
dants in criminal case. 82 ALR3d 245.
[5] 30 Am Jur 2d, Evidence § 1157.
[6] 75 Am Jur 2d, Trial § 877.
[7, 8] 67 Am Jur 2d, Robbery § 7.
[9] 67 Am Jur 2d, Robbery § 72.
[9, 10] 75 Am Jur 2d, Trial § 875.
[10] 67 Am Jur 2d, Robbery § 73.
Effect of failure or refusal of court, in robbery prosecution, to
instruct on assault and battery. 58 ALR2d 808.
[11] 29 Am Jur 2d, Evidence § 327.
81 Am Jur 2d, Witnesses § 569.
[12] 29 Am Jur 2d, Evidence § 320.
[13] 21 Am Jur 2d, Criminal Law § 526.
[14] 21A Am Jur 2d, Criminal Law § 844.
Propriety and prejudicial effect of gagging, shackling, or otherwise
physically restraining accused during course of state criminal
trial. 90 ALR3d 17.
[15] 21A Am Jur 2d, Criminal Law §§ 979, 982.
Accused's right to choose particular counsel appointed to assist him.
66 ALR3d 996.

ing leave to appeal, remanded the matter to the Court of Appeals with instructions that the Court of Appeals, while retaining jurisdiction, should remand to the circuit court "for an evidentiary hearing and findings as to whether there was good cause for not bringing the defendants to trial within 120 days of their arrival in Michigan and whether the resulting continuances were necessary and reasonable" and that the Court of Appeals should thereafter "reconsider this matter in light of the findings of the trial court". 412 Mich 916 (1982). On remand, the trial court, after an evidentiary hearing, held that the continuances were necessary and reasonable and for good cause. The trial court submitted its findings. *Held:*

1. The continuance which was the primary cause for the failure to bring defendants to trial within the 120-day period resulted from the need to get the preliminary examination transcript prepared. Since that transcript was necessary to resolve a pretrial motion made by defendant Charles Meyers and the prosecutor immediately sought that transcript, the continuance during the period the transcript was being prepared was for good cause and was necessary and reasonable under these circumstances. The 120-day period was therefore tolled for that period. This period was also tolled with repect to Daniel Meyers, since he made no objection to the delay which would obviously ensue as a result of his codefendant's motion. The period being properly tolled under the provisions of the Interstate Agreement on Detainers, the trial was commenced within the period mandated by statute.

2. The trial court properly denied the motion for severance. The defenses of the defendants were not antagonistic to one another.

3. The trial court properly admitted into evidence the statements of each defendant even though each defendant's statement tended to not only inculpate himself but also inculpate the other, since under such circumstances any error in the admission of the statements was harmless error.

4. Any error on the part of the trial court in refusing to instruct the jury on larceny from a person, assault with intent to commit armed robbery, and assault with intent to commit unarmed robbery was harmless beyond a reasonable doubt, since the jury was instructed on lesser included offenses of attempted armed robbery and attempted unarmed robbery and nevertheless returned a verdict of guilty on the charged crime of armed robbery.

5. Reversal is not mandated by reason of the trial court's delay in ruling on defendants' motions to prevent the prose-

cutor from using evidence of prior convictions for impeachment if defendants took the stand to testify, since the matter was resolved in defendants' favor at the close of the prosecution's case in chief and defendants have not shown that they were otherwise prejudiced. Under such circumstances, the delay in the ruling on the motion did not play a significant role in defendants' decision not to testify.

6. The trial court properly denied defendant Daniel Meyers's motion for mistrial based upon statements made by prosecution witnesses indicating that defendants had been involved in criminal activities other than the armed robbery, since such statements were brief and isolated and did not deprive defendants of a fair trial.

7. Since a trial court may properly consider pending charges in imposing sentence, and since sentencing may be deferred for a reasonable period for good cause, no error resulted from the trial court's delaying the imposition of sentence upon Daniel Meyers briefly pending the resolution of the outstanding murder charge against Daniel Meyers.

8. No error resulted from the possibility that the jury viewed Daniel Meyers while he was in handcuffs.

9. The trial court properly refused to appoint new counsel for Daniel Meyers since there was no allegation that counsel was inadequate, lacking in diligence, or disinterested in the case and any breakdown in communication between defendant and counsel was as a result of defendant's refusal to cooperate with counsel because he wanted counsel of his own choice.

Affirmed.

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — DELAY OF TRIAL.

A prisoner who is brought from another state pursuant to the Interstate Agreement on Detainers for purpose of trial is to be brought to trial within 120 days of his arrival in the receiving state or the charges should be dismissed; however, any necessary and reasonable continuance granted in open court with the prisoner or his counsel present is not included in the 120 days, the trial court may toll the time period for any time the prisoner is unable to stand trial, and any delay caused by the prisoner's request or to accommodate the prisoner is not included in the 120-day period (MCL 780.601; MSA 4.147[1]).

2. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — DELAY OF TRIAL.

The 120-day period in which a trial must commence pursuant to

the provisions of the Interstate Agreement on Detainers is tolled during the time it takes to secure a preliminary examination transcript where counsel for defendant objects to the information filed in circuit court, the case cannot proceed to trial while the parties are uncertain of the nature of the outstanding charges, the parties' agree that the preliminary examination transcript itself is necessary to clarify the problem, and the prosecutor acts immediately to resolve the defendant's objection (MCL 780.601; MSA 4.147[1]).

3. CRIMINAL LAW — TRIAL — JOINDER.

There is a strong public policy in favor of joint trials; the general rule is that a criminal defendant does not have a right to a separate trial.

4. CRIMINAL LAW — TRIAL — JOINDER — SEVERANCE.

A criminal defendant's motion for a separate trial should be granted where the defenses of the defendants joined for trial are antagonistic to one another; however, where the codefendants both maintain that they were not at the scene of the crime and were in no way involved in the commission of the crime, it is not error for a trial court to deny a motion for separate trials.

5. CRIMINAL LAW — ADMISSIONS — CODEFENDANTS.

The admission into evidence of the statements of each of two codefendants is not in error where each defendant's statement inculpated his codefendant but also inculpated the defendant making the statement, since the error, if any, is harmless beyond a reasonable doubt.

6. CRIMINAL LAW — INCLUDED OFFENSES — JURY INSTRUCTIONS.

A defendant has a right upon request to have the jury instructed on necessarily included offenses of the crime charged and a right upon request to instructions on those cognate lesser included offenses which are supported by evidence in the record.

7. ROBBERY — ARMED ROBBERY — INCLUDED OFFENSES.

Unarmed robbery, assault with intent to commit robbery while armed, and attempt to commit robbery unarmed are necessarily included offenses of armed robbery.

8. ROBBERY — ARMED ROBBERY — INCLUDED OFFENSES.

Larceny from the person is a cognate lesser included offense of armed robbery.

9. Criminal Law — Jury Instructions — Lesser Included Offenses — Harmless Error.

Any error on the part of a trial court in refusing to instruct a jury on larceny from a person in a trial for armed robbery is harmless beyond a reasonable doubt where the jury is instructed on attempted armed robbery and unarmed robbery and returns a verdict of guilty of the charged offense of armed robbery.

10. Criminal Law — Jury Instructions — Lesser Included Offenses — Harmless Error.

Any error on the part of a trial court to instruct a jury on assault with intent to commit armed robbery and assault with intent to commit unarmed robbery in a trial for armed robbery was harmless beyond a reasonable doubt where the defendant's defense was nonparticipation in the crime, the evidence of the completed crime of armed robbery was undisputed at trial and the jury was instructed on attempted armed robbery and unarmed robbery and returned a verdict of guilty of the charged offense of armed robbery.

11. Criminal Law — Evidence — Prior Convictions — Impeachment.

It is better practice for a trial court to rule on a motion to prohibit the prosecution from using evidence of prior convictions for impeachment purposes at the time the motion is made; however, no error mandating reversal occurs where the trial court takes the motion under advisement, a determination that such evidence will not be used is made at the close of the prosecution's case in chief, and the defendant makes no showing that his trial strategy was adversely affected, since under such circumstances the delay in the decision on the motion in no way plays a significant role in the decision of the defendant to testify or not to testify.

12. Criminal Law — Mistrial — Evidence of Other Crimes.

A motion for mistrial based upon references by the prosecution's witnesses to the fact that the defendant was facing other criminal charges is properly denied where such references are brief and isolated and did not deny the defendant a fair trial.

13. Criminal Law — Sentencing — Delay in Sentencing.

Sentencing may be deferred for a reasonable period and for a proper purpose; since a sentencing court may consider pending criminal charges in imposing sentence, a sentencing court, in

its sound discretion, may delay sentencing briefly to determine whether an outstanding charge results in a conviction.

14. CRIMINAL LAW — HANDCUFFS — DEFENDANTS.

A defendant has a right to appear in court without handcuffs; however, the conduct of orderly court process often unavoidably requires a defendant to appear in court in handcuffs or prison uniform and, absent a showing that such necessity was lacking or that prejudice resulted, the Court of Appeals will not reverse a defendant's conviction merely because the jury may have seen the defendant in handcuffs.

15. ATTORNEY AND CLIENT — CRIMINAL LAW — APPOINTED COUNSEL — SUBSTITUTION OF COUNSEL.

A request for substitution of appointed counsel is properly denied where the defendant objects to his present attorney because he is not the attorney of defendant's choice but defendant makes no assertion that the attorney is inadequate, lacking in diligence, or disinterested in the case; a defendant is not entitled to substitution of appointed counsel on the basis of a breakdown in the attorney-client relationship where any such breakdown is the result of the defendant's purposeful refusal to cooperate with his assigned counsel.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Lawrence G. Kaluzny,* for Daniel Meyers.

*Cooper, Shifman & Gabe* (by *Philip H. Seymour),* for Charles Meyers.

Before: DANHOF, C.J., and M. F. CAVANAGH and CYNAR, JJ.

PER CURIAM. Defendants were charged with armed robbery, a violation of MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, a violation of MCL 750.227b; MSA 28.424(2). From convictions of

armed robbery, the defendants appealed to this Court, which dismisssed the charges against the defendants on the basis that Art IV(c) of the Interstate Agreement on Detainers Act had been violated because the defendants were not brought to trial within 120 days of their arrival in Michigan. *People v Meyers,* 109 Mich App 719; 311 NW2d 454 (1981). The prosecutor applied for leave to appeal to the Supreme Court which, in lieu of granting the application, vacated the judgment of this Court and remanded the case, instructing this Court to remand the matter to the circuit court for an evidentiary hearing and findings as to whether there was good cause for not bringing the defendants to trial within the 120-day period and whether the resulting continuances were reasonable and necessary. 412 Mich 916 (1982). We remanded, as directed, and now have the matter before us for resolution.

As we stated previously in *Meyers, supra,* p 721, the purpose of the Interstate Agreement on Detainers, MCL 780.601; MSA 4.147(1), is to facilitate the disposition of charges in one jurisdiction when an accused is incarcerated in another jurisdiction. Thus, Art IV(c) of the act requires the trial court to dismisss any charges brought against a defendant under the act if the defendant has not been brought to trial within the specified 120-day period. However, the 120-day time period may be tolled: (1) for any period which is the result of any necessary and reasonable continuance for good cause shown in open court with the defendant or his counsel present, (2) for any period during which the defendant is unable to stand trial, and (3) for any period of delay caused by the defendant's request or in order to accommodate the defendant. *Meyers, supra,* p 722; *People v Cook,* 95 Mich App 645, 652-653; 291 NW2d 152 (1980).

Upon a review of the circuit court's findings, we now conclude that, in this case, necessary and reasonable continuances resulted in good cause for not bringing the defendants to trial within 120 days of their arrival in Michigan.

Defendants were returned to Michigan on a detainer agreement on March 14, 1979. On March 15, 1979, they were arraigned in district court. The preliminary examination was held on March 26, 1979, and the defendants were bound over for trial to the circuit court. The first problem causing a delay occurred at this time. The proofs offered at the preliminary examination indicated that defendant Charles Meyers was the principal involved in the armed robbery and the felony-firearm. However, the preliminary transcript shows that the magistrate bound over defendant Daniel Meyers on charges of armed robbery and felony-firearm but bound over defendant Charles Meyers only on the charge of armed robbery. To complicate matters, the magistrate's signed return stated that both the defendants were bound over on both charges.

On April 10, 1979, both the defendants were arraigned in circuit court. Defendant Charles Meyers objected to the filed information, arguing that he had only been bound over on a single count of armed robbery. After the prosecutor informed the court that the return indicated that defendant Charles Meyers had been bound over on both charges, counsel for defendant Charles Meyers stated: "Well, we'll probably have to wait for the filing of the transcript." The following day the prosecutor contacted the court reporter in attendance at the preliminary examination and requested preparation of the preliminary examination transcript.

We agree with the circuit court's finding that the ensuing delay was necessary and reasonable and find that, under this peculiar set of facts, the act's 120-day period was properly tolled during the time it took to obtain the transcript, *i.e.,* from April 10, 1979, to June 11, 1979. Our conclusion is based upon a consideration of the following factors: (1) counsel for defendant Charles Meyers objected to the filed information, (2) the case could not proceed to trial while the parties were uncertain regarding the nature of the outstanding charges, (3) the defense counsel conceded that the examination transcript itself was necessary to clarify the problem, and (4) the prosecutor acted immediately to resolve the defendant's objection. In addition, although only defendant Charles Meyers objected to the information at the arraignment, we hold that the 120-day period was tolled with respect to defendant Daniel Meyers as well because he was present at the arraignment when the objection was made and made no objection to the obvious delay that was to ensue. *Foran v Metz,* 463 F Supp 1088, 1097 (SD NY, 1979).

Our further review of the circuit court's decision on remand leads us to conclude that the court properly tolled the statute for other delays that were necessary and reasonable, and thus we reinstate the charges against the defendants. In light of our disposition of this issue, we will now address the remaining issues the defendants raised on appeal.

Defendants argue that reversal is mandated because the trial court erred in denial of their motions for separate trials. We find no merit in this assertion. There is a strong public policy in favor of joint trials, and the general rule is that a defendant does not have a right to a separate trial.

*People v Hurst,* 396 Mich 1, 6; 238 NW2d 6 (1976); *People v Carroll,* 396 Mich 408, 414; 240 NW2d 722 (1976). Although a defendant's motion for severance should be granted when the defenses of the defendants joined for trial are antagonistic to one another, *Hurst, supra,* the defendants in the instant case both alleged that they were neither present at the scene of the robbery nor involved in the commission of the robbery in any fashion. Since their defenses were consistent with one another, we hold that the trial court did not err in failing to order separate trials.

Defendants next argue that the trial court erred in allowing the prosecutor to introduce admissions allegedly made by each defendant which tended to inculpate the other. Defendants argue that the admission of these statements was prejudicial and violated the rule set forth in *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), in which the United States Supreme Court held that the admission in a joint trial of significantly incriminating extrajudicial statements of a codefendant who is not subject to cross-examination impermissibly infringes upon the other defendant's right of cross-examination guaranteed by the Sixth Amendment. The *Bruton* Court also held that a limiting instruction to the jury that the statement could only be used against its maker was insufficient to cure the prejudice inherent in such circumstances.

However, in *Harrington v California,* 295 US 250; 89 S Ct 1726; 23 L Ed 2d 284 (1969), the Court held that a violation of the *Bruton* rule does not require reversal if such error is found to be harmless beyond a reasonable doubt. In *People v Miller,* 88 Mich App 210, 221; 276 NW2d 558 (1979), *rev'd on other grounds* 411 Mich 321; 307 NW2d 335

(1981), this Court invoked the harmless error doctrine where interlocking or substantially similar confessions were involved. The Court stated:

"[E]ach defendant admitted in his own confession the prejudicial information contained in the confessions of his codefendants. Where the various confessions are interlocking or substantially similar, the 'powerfully incriminating extrajudicial statements of a codefendant' (391 US 135) are not present as in *Bruton,* and hence it is harmless error at most to admit such statements."

We agree that the admission of the defendants' statements was error under *Bruton,* since they tended to implicate a codefendant, even though neither codefendant was mentioned by name in the statements. However, we find that under the circumstances of this case, the admission of such testimony was harmless beyond a reasonable doubt.

Defendant Charles Meyers made statements, which were admitted, to the effect that he and another person had just robbed a business. Although these admissions may have implicated defendant Daniel Meyers, similar incriminating statements were made by Daniel Meyers himself. He allegedly told a witness that he drove the "getaway car" during the robbery and mentioned that a person inside the store had seen him and might be able to identify him. Since none of the statements by defendant Charles Meyers specifically referred to defendant Daniel Meyers by name, since defendant Daniel Meyers's own admissions were substantially similar to those attributed to defendant Charles Meyers, and since the court repeatedly instructed the jury that a statement or admission of a codefendant could not be used or considered in any way against the other defen-

dant, we conclude that the admission of the statements made by defendant Charles Meyers was harmless beyond a reasonable doubt with respect to defendant Daniel Meyers.

We reach a similar conclusion with respect to the admissions of defendant Daniel Meyers which allegedly implicated defendant Charles Meyers in the robbery. Although defendant Daniel Meyers allegedly asked defendant Charles Meyers whether he would use the orange ski mask again, it was defendant Charles Meyers who allegedly stated that they should dispose of the mask because it had been used in the armed robbery. Given the inculpatory admissions attributed to defendant Charles Meyers, we are not persuaded that the admission of his codefendant's statements prejudiced his case in any way and conclude that their admission was harmless beyond a reasonable doubt.

Defendants next argue that the trial court committed error mandating reversal by refusing the defendants' request to instruct the jury on certain lesser included offenses. At trial, both the prosecutor and the defendants requested the court to instruct the jury on the lesser included offenses of attempted armed robbery, unarmed robbery, larceny from a person, assault with intent to commit armed robbery, and assault with intent to commit unarmed robbery. The trial court agreed to instruct the jury only on the lesser included offenses of attempted armed robbery and unarmed robbery.

In *People v Kamin,* 405 Mich 482, 493; 275 NW2d 777 (1979), the Michigan Supreme Court held:

"[I]t is clear that a defendant has a right upon request to have the jury instructed on necessarily included offenses. Further, a defendant has a right upon

request to jury instructions on those cognate lesser included offenses which are supported by record evidence." (Footnote omitted.)

The *Kamin* Court also held that assault with intent to commit armed robbery and attempt to commit unarmed robbery were necessarily included offenses of armed robbery, whereas larceny from the person is a cognate included offense of armed robbery. 405 Mich 501.

It is clear that reversal is not automatically required for failure to instruct on a cognate lesser included offense; the harmless error rule is applicable and the test is whether the failure to give the requested instruction was prejudicial. *People v Marshall,* 115 Mich App 433; 320 NW2d 396 (1982). This Court has found harmless error in cases where the trial court instructed on one lesser included offense but refused to instruct on an additional requested lesser included offense and the jury returned a verdict on the principal charge. *Marshall, supra; People v Baker #2,* 103 Mich App 704; 304 NW2d 262 (1981); *People v Medrano,* 101 Mich App 577; 300 NW2d 636 (1980); *People v Trout,* 95 Mich App 163; 290 NW2d 109 (1980). The Court reasoned that, if the jury had any doubts regarding the defendant's guilt of the charged offense, it could have convicted him of a lesser included offense; thus, when the jury is instructed on a lesser included offense but convicts the defendant of the charged offense, the failure of the court to instruct on other lesser included offenses results in no prejudice to the defendant. *Baker #2, supra,* pp 713-714. In light of this authority, we find the trial court's failure to instruct the jury on the cognate lesser included offense of larceny from a person to be harmless error.

We think the same reasoning should be applicable in this case to the necessarily included lesser offenses of assault with intent to commit armed robbery and assault with intent to commit unarmed robbery. The Supreme Court recently held in *People v Adams,* 416 Mich 53, 57; 330 NW2d 634 (1982), that:

"A defendant's request to instruct the jury that it may find the defendant guilty of the cognate offense of attempt to commit the charged offense *or of one of the necessarily included offenses of the charged offense* must therefore be granted only where there is evidence, or on jury view a lack of evidence, tending to establish the elements of the cognate offense of attempt." (Emphasis added.)

In *Adams,* the defendant was originally charged with armed robbery, and the Supreme Court held that the trial court's failure to give the defendant's requested instructions on attempted armed robbery and attempted unarmed robbery was not error mandating reversal because the evidence at trial did not indicate that only an attempt had been committed.

In the instant case the undisputed evidence at trial indicated that the completed offense of armed robbery had occurred. The theory of the defense was that the defendants had not participated in the commission of the crime; thus, their requests for instructions on lesser included offenses were not based on their testimony, evidence, or theory of the case. In addition, the jury was instructed on two lesser included offenses and was thus given an opportunity to find the defendants guilty of a lesser offense, yet the jury returned verdicts of guilty of armed robbery for both the defendants. We conclude that the defendants here were not

prejudiced by the trial court's failure to instruct the jury on the lesser included offenses; the error was harmless beyond a reasonable doubt.

Defendants next argue that the trial court erred in waiting to rule on their motions to prevent the prosecutor from using evidence of their prior convictions for impeachment purposes. The trial judge took the motions under advisement and indicated that he would rule on the matter at the completion of the prosecution's case. Defendants argue that by refusing to rule on these motions, the trial judge impaired the defendants' ability to adequately cross-examine the prosecution's witnesses and hindered their ability to appear as witnesses in their own behalf.

Although it is better practice for a trial court to rule on such a motion at the time it is made, we do not conclude that a delay in such a ruling necessarily constitutes reversible error. In *People v Lytal,* 415 Mich 603; 329 NW2d 738 (1982), the Supreme Court held that a defendant is entitled to know *before* he testifies whether the prosecution will be permitted to introduce evidence of a prior conviction for the purpose of impeachment. In the instant case, the defendants knew before it was their opportunity to testify that their prior convictions would not be used against them. The prosecutor stipulated at the close of his case that he would not attempt to introduce evidence of defendants' prior convictions for impeachment purposes. In light of such a stipulation, we find that the question of the admissibility of evidence of the defendants' prior convictions did not play a significant role in their decision not to testify. Furthermore, while the defendants contend that the court's decision to delay its ruling on the matter restricted their ability to cross-examine the prose-

cution's witnesses, they fail to specify areas of examination which were foreclosed to them as a result of the court's action. We find no error mandating reversal.

Defendant Daniel Meyers next argues that the testimony of two prosecution witnesses was so prejudicial as to mandate reversal because it indicated that the defendants had been involved in criminal activities in addition to the charged armed robbery and, accordingly, the trial court should have granted his motion for a mistrial. We disagree.

In *People v Robertson,* 87 Mich App 109; 111-112; 273 NW2d 501 (1978), this Court stated:

"The grant or denial of a mistrial motion rests in the sound discretion of the trial judge and relief is merited only after a finding of abuse of that discretion. To find reversible error, the trial court's denial of defendant's mistrial motion must have been so gross as to have deprived him of a fair trial and to have resulted in a miscarriage of justice." [Citations omitted.]

Our review of the testimony in question indicates that any references by the prosecution's witnesses to the fact that the defendants were facing other criminal charges was brief and isolated. We do not find that the testimony deprived the defendants of a fair trial, and thus the trial judge did not abuse his discretion in denying the motion for a mistrial.

Defendant Daniel Meyers also argues that the trial court erred in delaying the imposition of his sentence pending the outcome of his first-degree murder trial. Defendant contends that the resulting two-month delay in imposing sentence constituted an abuse of the trial court's discretion. Defendant failed to cite any authority in support of this contention, and we are aware of none. It is

well-settled that a sentence may be deferred for a reasonable period and for a proper purpose. *People v Turner*, 92 Mich App 485; 285 NW2d 340 (1979). Since a sentencing judge may consider pending criminal charges in imposing sentence, *People v Henry*, 395 Mich 367; 236 NW2d 489 (1975), we find that it is within a trial court's sound discretion to delay sentencing briefly to determine whether or not an outstanding charge results in a conviction.

Defendant Daniel Meyers next argues that the trial court erred in failing to grant his motion for a mistrial based on the fact that members of the jury may have seen him in handcuffs. The prosecutor argues that the handcuffing of the defendant was done outside the courtroom during recesses and while the defendant was being transported to jail and that it was necessary for security reasons not only because the case involved a crime of violence but also because the defendant's background necessitated these security procedures.

In *People v Herndon*, 98 Mich App 668, 672; 296 NW2d 333 (1980), this Court noted that orderly court procedures often require that a defendant appear at court in handcuffs:

"Except in unusual situations, a defendant has a right to appear in court without handcuffs. *People v Shaw*, 381 Mich 467; 164 NW2d 7 (1969). However, as a matter of practical necessity, the conduct of orderly court process often unavoidably requires a defendant to appear in court in handcuffs or prison uniform. *People v Carroll*, 49 Mich App 44, 49; 211 NW2d 233 (1973), aff'd 396 Mich 408; 240 NW2d 722 (1976). Therefore, absent a showing that such necessity was lacking or that prejudice has resulted, this Court will not reverse a defendant's criminal conviction merely because the jury may have seen the defendant in handcuffs."

We conclude that, under the circumstances of this case, the security measures employed during the trial were not unreasonable, and since the defendant has failed to show the existence of any prejudice, we find no error mandating reversal.

Lastly, defendant Daniel Meyers argues that the trial court erred in denying his motion for a substitute counsel. Defendant claims that he was entitled to a substitute counsel after his defense counsel indicated that he and the defendant were having problems communicating about the case.

Although an indigent defendant is constitutionally guaranteed the right to counsel, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. *People v Krist*, 93 Mich App 425, 435; 287 NW2d 251 (1979). He is only entitled to a substitution of counsel upon a showing of good cause, provided that the substitution of counsel will not unreasonably disrupt the judicial process. Furthermore, the decision regarding such substitution is within the sound discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion. *Krist, supra.*

During the pretrial proceedings in this case, defendant Daniel Meyers and his defense counsel addressed the trial court regarding the defendant's request for substitution of counsel. Defense counsel informed the court that he wanted to discuss with defendant Daniel Meyers the witnesses which he wanted brought in and the questions which needed to be asked of the jury. Defense counsel indicated that the defendant Daniel Meyers did not want to talk to him and was not willing to cooperate with him but that the defense counsel was ready to proceed to trial if given the needed cooperation.

Defendant Daniel Meyers informed the court that he objected to his attorney because he was not the attorney of the defendant's choice, that he and his attorney disagreed about the case, and that he did not like the language his defense attorney used toward him. The court noted that defendant Daniel Meyers had previously had a different attorney whom he also did not want and that he was currently represented by a good attorney and concluded: "It's up to you, whether you want to talk to him or not. We're going to trial."

We find that neither the statements of defense counsel nor defendant Daniel Meyers evidence of a breakdown in the attorney-client relationship such that defendant Daniel Meyers was entitled to a substitution of counsel. Defendant Daniel Meyers did not assert that his attorney was inadequate, lacking in diligence, or disinterested in his case. *People v Ginther,* 390 Mich 436, 441-442; 212 NW2d 922 (1973). Defense counsel indicated that he had attempted to communicate with defendant Daniel Meyers, that he was ready and willing to cooperate with him, and that he was prepared to take the case to trial. Defendant Daniel Meyers indicated that his defense counsel did not heed his requests and communicated with him in a fashion which offended him. In such a situation, the trial court was put in the position of having to choose which version of the relationship to believe. We do not think that the trial judge abused his discretion in finding that the defense counsel had attempted to communicate with defendant Daniel Meyers, that the defense counsel was ready and willing to cooperate with his defendant, and that his defendant was obstructing the relationship by failing to cooperate with the defense counsel. A defendant may not purposely break down the attorney-client

relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel. We find no error.

Affirmed.