# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAUN ROBERT SALMINEN,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2017

No. 330346
Muskegon Circuit Court
LC No. 15-066265-FH

Before: BORRELLO, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Shaun Salminen, appeals as of right his jury trial conviction of prisoner in possession of contraband, MCL 800.281(4). Salminen was sentenced as a third-offense habitual offender, MCL 769.11, to 18 months' to 10 years' imprisonment. Because there are no errors warranting relief, we affirm.

## I. BASIC FACTS

Salminen was incarcerated at the Earnest C. Brooks Correctional Facility in Muskegon, Michigan. On March 21, 2015, a corrections officer was observing the prisoners as they were participating in outdoor activities. In particular, he was watching a prisoner that was suspected of bringing drugs into the prison. He testified that he observed that prisoner put his hand into his pocket, pull his hand out, and then shake hands with Salminen, who then put his hand in his pocket and walked away. The corrections officer approached Salminen. After a pat-down search, he asked Salminen to empty his pockets. Salminen complied, and a single piece of folded paper fell from his hand to the ground. According to the corrections officer, Salminen put his foot over the paper, but moved it when asked. The officer retrieved the paper, which contained a green, leafy substance that the officer believed was marijuana. After testing by the Michigan State Police crime lab, the substance was identified as 0.13 grams of marijuana.

At trial, Salminen acknowledged that he had talked to the prisoner suspected of bringing drugs into the prison, but he said that he did not receive anything from him. He explained that he was just talking to another prisoner when he saw a couple of corrections officers exit the building with blue gloves on. He said that one of the officers approached him and asked to pat him down. He complied. Then, when he was asked to empty his pockets, four or six pieces of paper fell out of his pocket and he bent down to pick them up. Salminen testified that he did not put his foot over any of the paper and that he did not intentionally step on the paper that the corrections

-1-

officer later found under his foot. Salminen also denied that the paper—and the marijuana in it—had come from his pocket. He explained that several prisoners had walked by the area where he was patted down and that when the prisoners see corrections officers wearing blue gloves, they start throwing stuff because the prisoners know that the officers will pat someone down looking for contraband.

## II. SUBSTITUTE LAWYER

### A. STANDARD OF REVIEW

Salminen first argues that the trial court erred by refusing his request for a substitute trial lawyer. "A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). An abuse of discretion "occurs when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (quotation marks and citation omitted).

### B. ANALYSIS

Before voir dire, Salminen asked the trial court to appoint him a new lawyer. He asserted that his lawyer had not visited him at the prison and did not give him a discovery packet until "last week." He further asserted that when they did talk his lawyer would not do the things that he asked him to do. He added that he felt like his lawyer was "railroading" for the prosecution. The trial court asked Salminen's lawyer if he had anything to say. Salminen's lawyer responded that he had not seen Salminen at the prison. He explained that the conversations they had at the pretrial and at the pretrial settlement conference were "animated" and that they "deteriorated into argumentative stuff." He added that he had thought he sent the discovery materials earlier, but made clear that he had sent everything he had the previous week. He also stated that the case was not complicated and that, in his opinion, some of the things that Salminen had requested were frivolous. Finally, he told the court that although he had not spoken with Salminen about his version of events, he was prepared to proceed to trial. The trial court denied Salminen's motion, finding that Salminen's lawyer was prepared to go to trial, was an experienced lawyer, and was not railroading Salminen for the prosecution. The court also noted that the jury was at the courthouse and everyone was ready to go.

" 'An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced.' " *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015), quoting *Traylor*, 245 Mich App at 462. "Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). Good cause may be found where defendant and his appointed lawyer develop a disagreement over fundamental trial tactics, which can include an assertion by the defendant that his lawyer is "inadequate, lacking in diligence, or disinterested in the case." *People v Buie (On Remand)*, 298 Mich App 50, 68; 825 NW2d 361 (2012), quoting *People v Meyers*, 124 Mich App 148, 166; 335 NW2d 189 (1983). However, "[a] mere allegation that a defendant lacks confidence in his or her attorney,

unsupported by a substantial reason, does not amount to adequate cause." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011).

The record reflects that Salminen received his discovery packet before trial, and given the straightforward nature of the case, it does not appear that was an insufficient time to review the materials. Further, although Salminen's lawyer did not meet with him at the jail, it is apparent that they did meet and discuss the case.

Salminen asserts that his lawyer refused to take requested actions, but he did not identify those actions for the trial court. Nevertheless, on appeal, Salminen identifies two actions he wanted his lawyer to take. First, he asserts that he wanted his lawyer to subpoena a witness who would testify that he saw the corrections office walk to where Salminen was standing, which was an area where other inmates had been standing. However, Salminen does not assert that the inmate would have testified that he saw another inmate drop the paper containing the marijuana. Thus, the inmate's testimony would have been cumulative to Salminen's own testimony at trial. Moreover, a disagreement between a defendant and his trial lawyer with regard to what evidence to present is not good cause for substitution of counsel. *Strickland*, 293 Mich App at 398. Second, Salminen asserts that he wanted his lawyer to secure a copy of the video recording of the incident. However, based on the record before us, it appears that no video of the incident was actually available. And, again, the decision about what evidence to present is not good cause for substitution of counsel. *Id*.[1]

Next, Salminen argues that his lawyer was not prepared for trial because he did not speak with him about his version of events before the day of trial. It is, however, apparent from the record that before the trial actually started, Salminen and his lawyer discussed Salminen's version of the events. Salminen's lawyer told the court that he wanted the opportunity to talk with Salminen before voir dire, and the trial court indicated that it would allow the time. Subsequently, during his opening statement, Salminen's lawyer referenced Salminen's version of events, which suggests that the conversation actually occurred. Additionally, Salminen's lawyer questioned the prosecution witnesses in accordance with a theory that another inmate had dropped the paper containing marijuana after seeing the corrections officers enter the yard wearing blue gloves. Therefore, it appears that Salminen's lawyer pursued the defense that Salminen wanted, and there is no indication that he was unprepared to try the case.

Finally, Salminen waited until the day of trial to request a new lawyer. The trial court ascertained that Salminen's lawyer was ready to proceed to trial. The prosecutor and presumably the witnesses were also present and waiting, as was the potential jurors. Therefore, a substitution at that point would have unreasonably delayed the judicial process. See *Mack*, 190 Mich App at 14.

---

[1] Salminen also asserts that his lawyer never told him whether a plea bargain was offered by the prosecution. However, it does not appear that Salminen's request for a substitute lawyer was premised on the possibility that his lawyer failed to communicate a proffered plea bargain.

Based on the foregoing, Salminen failed to establish good cause for the appointment of a substitute lawyer. *Id*.

## III.  EFFECTIVE ASSISTANCE

## A.  STANDARD OF REVIEW

Next, Salminen argues that he was denied the effective assistance of a lawyer at trial because of the alleged errors discussed above.  "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).  The trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).  However, because an evidentiary hearing on the ineffective assistance claim was not held, our review is limited to errors apparent on the record. *Sabin* (*On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

## B.  ANALYSIS

To prevail on a claim of ineffective assistance, a defendant must establish that (1) that his lawyer's performance "was below an objective standard of reasonableness under prevailing professional norms," and (2) that but for his lawyer's "unprofessional errors" there is a reasonable probability that "the outcome of the proceedings would have been different." *Id*.  The defendant must overcome the presumption that his lawyer provided effective assistance. *Id*.

Here, Salminen failed to establish that his lawyer was ineffective.  First, although his lawyer did not meet with him at the prison, the record reflects that he did communicate with Salminen and was prepared for trial.  Next, Salminen received his discovery packet a week before trial, allowing sufficient time for review of a relatively uncomplicated case.  Additionally, his lawyer was not ineffective for failing to take all the actions requested by Salminen.  As indicated above, the only stated actions were the failure to call a witness whose testimony appears cumulative to Salminen's and the failure to obtain a copy of the video recording of the incident.  Salminen, however, has not provided an affidavit of what the other inmate would have testified to, nor has he established that video recording existed.  Therefore, he has failed to establish the factual predicate for his claim.  See *Douglas*, 496 Mich at 592.  Finally, to the extent that Salminen argues his lawyer was ineffective for failing to discuss his version of events before trial, we note that Salminen testified at trial to his version of events.  Therefore, it is not clear how additional conversation with his lawyer about the events would have affected the outcome of the trial.  Accordingly, on this record, Salminen has failed to establish that his lawyer's performance was deficient, and he has not established that there is a reasonable probability that the outcome of the trial would have been different absent his lawyer's alleged errors.  See *Sabin* (*On Second Remand)*, 242 Mich App at 659.

## IV. SENTENCING

### A. STANDARD OF REVIEW

Finally, Salminen argues that the trial court improperly scored prior record variable (PRV) 1. Because Salminen failed to object to the scoring of PRV 1 at sentencing, in a motion for resentencing, or in a motion to remand filed in this Court, the issue is unpreserved. *People v Loper*, 299 Mich App 451, 456; 830 NW2d 836. Unpreserved sentencing issues are reviewed for plain error. *Id*. Plain error requires that: "1) [an] error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

### B. ANALYSIS

PRV 1 is scored for "prior high severity felony convictions." MCL 777.51. The trial court must score PRV 1 at 50 points for a defendant with two prior high severity felony convictions. MCL 777.51(1)(b). Relevant to this appeal, a conviction for a crime listed in offense class D is a prior high severity felony conviction. MCL 777.51(2)(a). Salminen had two convictions for breaking and entering with intent to commit a felony, MCL 750.110, which is a class D felony, MCL 777.16f. Therefore, Salminen had two prior high severity felonies, and the trial court properly scored him 50 points for PRV 1.[2]

Affirmed.

/s/ Stephen L. Borrello
/s/ Jane E. Markey
/s/ Michael J. Kelly

---

[2] Because the trial court did not err in scoring PRV 1 at 50 points, Salminen's lawyer was not ineffective for failing to object to the scoring. See *People v Riley (After Remand)*, 468 Mich 135, 142; 659 NW2d 611 (2003) (stating that a defense lawyer is not ineffective for failing to make a frivolous or meritless motion).