*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 12, 2026
9:11 AM

Plaintiff-Appellee,

v

No. 374662
Bay Circuit Court
LC No. 2021-010303-FC

PARELL LAVON MOSKAL,

Defendant-Appellant.

Before: KOROBKIN, P.J., and YATES and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for (1) first-degree premeditated murder, MCL 750.316(1)(a); and (2) carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve (1) 35 to 60 years, and (2) 2 years in prison, respectively. We affirm.

## I. FACTS

This case arises out of the shooting, and killing, of the victim in May 2021. The victim was found dead in an alleyway behind a party store. Officers obtained a plethora of surveillance-video footage in this case, which depicted the events leading up to the shooting as well as the shooting itself. On the night of the incident, defendant, along with three other men, arrived at the store. Defendant loitered outside for about four to five minutes before he saw the victim arrive. Once defendant saw the victim enter the store, he followed behind him. Defendant and his companions exited the store a couple minutes later, and the victim followed soon after. The victim appeared to have friendly conversation with the men, and the group all walked around the side of the store together. Seconds later, the victim was shot from behind in the alleyway. Defendant was convicted and sentenced, as stated earlier. Defendant now appeals.

## II. PROBABLE CAUSE CONFERENCE

-1-

As an initial matter, in a Standard 4 brief,[1] defendant argues that the trial court erred by not holding a probable cause conference in this case. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Generally, to preserve an issue for appellate review, a defendant must raise the issue in the trial court, *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012), which defendant did not do in this case. Nonetheless, it appears that defendant is arguing that the trial court lacked subject-matter jurisdiction, which may be raised for the first time on appeal. *People v Johnson*, 345 Mich App 51, 58; 3 NW3d 846 (2022). Whether a court has subject-matter jurisdiction presents a question of law reviewed de novo. *Id.* "That means we review the issue independently, owing no deference to the trial court's decision." *Id.*

## B. ANALYSIS

Defendant argues that the district court's failure to hold a probable cause hearing, and his counsels' failure to schedule a probable cause hearing, constituted ineffective assistance of counsel and resulted in a violation of defendant's due process rights and the trial court's lack of subject-matter jurisdiction. As will be discussed, a probable cause conference was held in this case, defendant was not denied the effective assistance of counsel, and the trial court had subject-matter jurisdiction over this matter.

MCL 766.4(1) provides that the magistrate before whom a defendant is arraigned on a felony charge shall set the dates for a probable cause conference and a preliminary examination at the time of arraignment. Specifically, the probable cause conference is "to be held not less than 7 days or more than 14 days after the date of the arraignment . . . ." MCL 766.4(1).

In this case, the district court register of actions indicates that defendant's arraignment was held on June 1, 2021, at which the court scheduled a "settlement conference" for June 11, 2021.[2] That "settlement conference" was held as scheduled, during which defendant's bond appears to have been discussed. Bond, of course, is one of the issues that a district court may review at a probable cause conference. See MCL 766.4(1)(b); MCR 6.108(C) and (D). And in this case, defendant's "settlement conference" was held just 10 days after the date of the arraignment, pursuant to the deadlines applicable to probable cause conferences under MCL 766.4(1). Accordingly, although the June 11, 2021 hearing was titled "settlement conference," opposed to "probable cause conference," it appears that the district court did indeed hold a probable cause conference, and no violation of MCL 766.4 or MCR 6.108 occurred.

Because a probable cause conference *was* held, defendant's alternative argument—that his counsels' failures to schedule a probable cause conference constituted ineffective assistance of counsel—also fails. "[T]rial counsel cannot be deemed ineffective for failure to raise a futile

---

[1] See Administrative Order No. 2004-6, 471 Mich ci, cii, Standard 4 (2004).

[2] The district court also scheduled a preliminary examination, but that hearing was adjourned until September 2021, for various reasons that are not relevant to this issue.

objection." *People v Skippergosh*, ___ Mich App ___, ___; ___NW3d ___ (2024) (Docket No. 364127); slip op at 10.

Moreover, "[s]ubject-matter jurisdiction is a legal term of art that concerns a court's authority to hear and determine a case." *Johnson*, 345 Mich App at 58 (quotation marks and citation omitted). "Subject-matter jurisdiction concerns a court's abstract power to try a case of the kind or character of the one pending and is not dependent on the particular facts of the case." *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011) (quotation marks, citations, and emphasis omitted). In this case, defendant was charged with a felony—first-degree premeditated murder. "Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases." *Id*. Therefore, the trial court had jurisdiction over defendant's felony charge in this case. Defendant's argument that a probable cause conference was not held concerns events or procedures of this case; it does not concern the court's abstract power to try a case of this kind or character. See *id*. Accordingly, defendant has failed to establish that the trial court lacked subject-matter jurisdiction in this matter.

## III. SUBSTITUTION OF COUNSEL

Defendant further argues that the trial court abused its discretion by denying defendant's request for a substitution of counsel. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant preserved this issue by raising it at the motion hearing six days before trial. See *Heft*, 299 Mich App at 78. "We review a trial court's decision denying substitution of counsel for an abuse of discretion." *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015). "A trial court abuses its discretion when it issues a decision that falls outside the range of principled outcomes." *Id*.

### B. LEGAL STANDARD

"An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced." *Id*. (quotation marks and citation omitted). "Substitution of counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id*. at 382-383 (quotation marks and citation omitted). "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *Id*. at 383 (quotation marks and citations omitted). "Counsel's decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *McFall*, 309 Mich at 383 (quotation marks and citations omitted).

In *People v Meyers*, 124 Mich App 148, 165; 335 NW2d 189 (1983), the defendant moved for a substitute trial counsel—on the basis that he and defense counsel were having difficulty communicating about the case—which the trial court denied. "[The defendant] informed the [trial] court that he objected to his attorney because he was not the attorney of the defendant's choice, that he and his attorney disagreed about the case, and that he did not like the language his defense attorney used toward him." *Id*. at 166. This Court noted that the defendant: (1) "did not assert that his attorney was inadequate, lacking in diligence, or disinterested in his case"; and (2) failed to cooperate with defense counsel despite defense counsel expressing a willingness to work with him. *Id*. Accordingly, this Court concluded that the trial court did not abuse its discretion "in finding that the defense counsel had attempted to communicate with [the defendant], that the defense counsel was ready and willing to cooperate with his defendant, and that his defendant was obstructing the relationship by failing to cooperate with the defense counsel." *Id*. This Court explained that "[a] defendant may not purposely break down the attorney-client relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel." *Id*. at 166-167.

## C. FACTS

In June 2021, defendant's first trial counsel withdrew due to a conflict of interest, and his second trial counsel, Sally Warren, was appointed thereafter. In May 2022, Warren moved to withdraw on the basis that "[t]here ha[d] been a breakdown in the attorney/client relationship to the extent that [counsel] does not believe that she should continue to represent Defendant." A hearing was held, at which Warren stated that she in no way thought that defendant was trying to disrupt the judicial process or delay the proceedings considering that trial was not set to begin until October 2022. The trial court granted Warren's motion, and defendant's third trial counsel, Alan Crawford, was appointed thereafter.

At a miscellaneous hearing just six days before trial, Crawford informed the trial court that he had been having difficulty communicating with defendant.[3] Crawford explained that a week or two prior, he had made special arrangements to sit down with defendant and defendant's father for an hour at the courthouse, and he "thought things would be fine after that." Nevertheless, when Crawford visited defendant at the jail earlier that week, defendant walked out of their meeting about 10 or 12 minutes after it started. Crawford explained the dilemma as follows:

[W]e continue to have this back and forth, in which [defendant's] upset with me for not filing specific motions on his case. He has asked me to file a motion to dismiss as a result of an illegal arrest. He's also asked me to file a motion to impeach or a motion to exclude testimony from an eyewitness, Jerek Wolff.

I've explained to him that both of those motions are frivolous. There is no remedy. I could be sanctioned for filing such motions. As a result, when we talk about that, he shuts down. I have not been able to talk to him about the strengths and weaknesses of the case, and really prepare with him. He hasn't been able to assist me, because he walks out of meetings. It's not the first time that it's

---

[3] Defendant stated that he had sent the court a letter regarding this matter earlier that day.

happened; it's been a continuing pattern. And here we are, on the eve of trial, on December the 15th, and he's not communicating with me.

This is not the first time that this has happened on a case, and I've explained to [defendant], this case is proceeding on December the 15th. I will be prepared. He can assist me, or not assist me, but this trial is happening. And I thought that it was prudent that I brought that to the Court's attention.

Defendant then stated the following:

I don't shut down when—when he talks to me; he shuts me down when I try to talk. When I told him I have motions to be filed, and he didn't know what they was [sic]—he didn't know what the motion was yet, he told me no, I don't. Then when I get to tell him, then he just tells me how I can't use them. And then I got different motions that I know can be used. Some of them, I guess, can't be used for what he's telling me, but from the law book I've been looking at through the law library tells me I can use them. But, I guess, they can't be used.

But I just feel like he's not working with me in my best interest. I tell him how I want to approach trial, but he keeps ignoring me and he keeps pressuring me to approaching trial the way I don't want to.

\* \* \*

He just—he won't listen to me. Every time I tell him how I feel about how I want to do things, he just—he makes me feel like I don't know what I'm talking about. You don't—I don't feel like I'm in control of my case. He won't even listen.

The trial court told defendant that Crawford was "a very, very good lawyer," and the court had "seen good things about him" and thought defendant "should be willing to listen to him, because he does know what he's talking about." Defendant interrupted the court, stating "I know, and I hear good things about him too." The court went on to say that "it is rare that a person with an appointed lawyer have someone of the skill of [Crawford]." Defendant then told the court that he knew he was "the reason of holding up [the judge's] process of retiring" because he was the judge's "last trial case." The court informed defendant that he was not holding up his retirement. Defendant then stated that his father could pay for an attorney for him, and he would "rather have a paid attorney that would—that I know is going—that I know that I paid, and I know that there shouldn't be no reason why he wouldn't fight for me." The court ultimately found that there was not a reason to replace Crawford, reasoning that if it replaced Crawford, defendant would have the same issues with his next attorney.

## D. ANALYSIS

Although the record demonstrates that defendant and defense counsel did not have a completely amicable relationship, the record does not show that defense counsel was in fact inattentive to his responsibilities, inadequate, or disinterested. See, e.g., *People v Buie*, 298 Mich App 50, 69; 825 NW2d 361 (2012). To the contrary, the evidence demonstrates that defense

counsel had made special arrangements to meet with defendant and his father, visited defendant in jail, attempted to discuss the strengths and weaknesses of defendant's case with him, and expressed his capability and readiness for trial with or without defendant's assistance. Nevertheless, defendant had a pattern of shutting down and walking out of their meetings. This case is very similar to *Meyers*, 124 Mich App at 166, in that: (1) defense counsel attempted to communicate with defendant, (2) defense counsel was ready and willing to cooperate with defendant, and (3) defendant was obstructing the relationship by failing to cooperate with defense counsel. "A defendant may not purposely break down the attorney-client relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel." *Id*. at 166-167.

Notably, defendant had six months to request substitution of counsel, yet he did so just six days before trial. Defendant acknowledged that he had heard good things about defense counsel, but he wanted to have his father pay for an attorney that he knew would fight for him. "[A] defendant's general unhappiness with counsel's representation is insufficient" to warrant a substitution of counsel. *McFall*, 309 Mich at 383 (quotation marks and citations omitted). Defendant specifically expressed frustration over defense counsel's unwillingness to file certain motions, but defense counsel testified that those motions were frivolous and could lead to him being sanctioned by the court. As previously stated, "[c]ounsel's decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." *Strickland*, 293 Mich App at 398.

Defendant therefore failed to show good cause for the appointment of substitute counsel, and the trial court did not abuse its discretion in denying defendant's request for a new attorney.

## IV. INSUFFICIENT EVIDENCE

Defendant further argues that his first-degree murder conviction should be reduced to second-degree murder because there was no evidence of identity or premeditation in this case. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

A defendant does not need to take any "special steps" to preserve a challenge to the sufficiency of the evidence. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). "This Court reviews de novo challenges to the sufficiency of the evidence." *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). "A prosecutor need not present direct evidence of a defendant's guilt. Rather, circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks, citation, and alteration omitted). "The credibility of witnesses and the weight accorded to evidence are questions for the jury, and any conflict in the evidence must be resolved in the prosecutor's favor." *People v Harrison*, 283 Mich

App 374, 378; 768 NW2d 98 (2009). "[W]e will not resolve credibility issues anew on appeal." *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002).

## B. ANALYSIS

First-degree premeditated murder includes "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). Relevant here, the elements of first-degree premeditated murder are: "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018). It is well settled that identity is also an element of every offense. *People v Bass*, 317 Mich App 241, 263; 893 NW2d 140 (2016). Although the Legislature has not explicitly defined the meaning of premeditation and deliberation, our Supreme Court has stated that "to premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *Oros*, 502 Mich at 240 (quotation marks, citation, and alteration omitted).

"Premeditation and deliberation may be established by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *Id*. at 242 (citation omitted). Our Supreme Court has explained that "some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Id*. (quotation marks and citation omitted). Although "the minimum time necessary to exercise this process is incapable of exact determination, it is often said that premeditation and deliberation require only a brief moment of thought or a matter of seconds." *Id*. at 242-243 (quotation marks, citations, and alteration omitted). "The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances." *Id*. at 243 (quotation marks and citation omitted). "Minimal circumstantial evidence is sufficient to prove an actor's state of mind." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001).

In this case, the surveillance-video footage displayed that about seven hours before the shooting, defendant traveled down the alleyway, entered the party store for a brief moment, and left without purchasing any items. The video footage further showed that minutes before the shooting, defendant loitered in front of the building until he saw the victim, at which time, he followed the victim inside the store. Defendant and his companions exited the store a couple minutes later, and the victim followed soon after. The victim appeared to have friendly conversation with the men, and the group all walked around the side of the store together. Seconds later, the victim was shot from behind in the alleyway. Although the alley surveillance-video footage is quite dark, the lights from the vehicle that the victim was approaching in the alley—as it sped away from the shooting—brightened the video for a brief second, illuminating the perpetrator's blue jacket. It was clearly established at trial that on the night of the incident, defendant had been wearing a blue colored jacket with palm trees on it.

Additionally, a neighbor testified that he had seen the group of men by his house "a couple times earlier in the day," and although he had seen defendant walking toward the party store 15 to 20 minutes before the shooting, he did not see defendant after the shooting. Moreover, one of defendant's companions testified that defendant was standing near the alley before the gunshot

rang out. And although the recovered firearm was not registered to defendant, defendant was located at the home where it was discovered.

Taken together, this evidence could allow a rational trier of fact to find defendant guilty of first-degree premeditated murder beyond a reasonable doubt, see *Oros*, 502 Mich at 240; therefore, we deny relief on this issue.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher P. Yates
/s/ Kathleen A. Feeney